IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| STUDIO FRAMES LTD., d/b/a ) | | |
| SOMERHILL GALLERY, ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | 1:01CV0876 | |
| ) | | |
| STANDARD FIRE INSURANCE COMPANY ) | | |
| ) | | |
| Defendant. ) | | |
| ) | | |

MEMORANDUM OPINION

Tilley, Chief Judge

This suit arises from a dispute between Plaintiff Studio Frames, LTD ("Studio Frames") and Defendant Standard Fire Insurance Company ("Standard Fire") regarding the amount of flood insurance coverage available to Studio Frames. This matter is currently before the Court on Plaintiff's Motion for Interest on Judgment [Doc. #75]. For the reasons set forth below, the Studio Frames's Motion for Interest on Judgment shall be DENIED.

I.

On August 17, 2005, a Memorandum Opinion was issued by this Court granting Studio Frames' motion for summary judgment and denying Standard Fire's motion for summary judgment [Doc. #74]. No judgment was entered at that time. On August 31, 2005, Studio Frames filed a Motion for Interest on Judgment [Doc.

#75], claiming that pre-judgment and post-judgment interest should be entered from the date that damages accrued to Studio Frames as a result of Standard Fire's breach of its contract with Studio Frames.[1] Standard Fire filed a Memorandum in Opposition to Plaintiff's Motion for Award of Interest on September 20, 2005 [Doc. #79], claiming that the "no interest" rule, prohibiting interest in suits against the United States absent an expressed waiver, is applicable.[2] Studio Frames replied to the memorandum in opposition on October 3, 2005 [Doc. #81]. Studio Frames' Motion for Interest on Judgment will now be considered.

II.

The United States is generally immune from awards of interest on claims against it under the traditional "no-interest" rule. Library of Congress v. Shaw, 478 U.S. 310, 314, 106 S.Ct. 2957, 2963 (1986). The no-interest rule provides that "[i]n the absence of express congressional consent to the award of interest separate from a general waiver of immunity to suit, the United States is immune from an interest award." Id. However, the no-interest rule has been found inapplicable in the following circumstances: "1) in a takings case where interest is

---

[1] Studio Frames suggests that "[i]t is most reasonable and gives [sic] Standard Fire the benefit of the doubt to set January 1, 2001 as the date from which interest should accrue at [sic] legal rate set by the State of North Carolina of eight percent per annum. (Pl.'s Mot. for Int. on J. 8 (citing N.C. Gen. Stat. 24-1).)

[2] Although Standard Fire is a private insurance company, the insurance policy at issue was written as part of the National Flood Insurance Program ("NFIP"). In 1983, the Federal Emergency Management Agency ("FEMA") promulgated regulations that provided for private insurers to operate as "Write-Your-Own" insurance companies ("WYO"). 44 C.F.R. §§ 61.13(f), 62.23(a).

constitutionally required, 2) where interest awards are specifically provided for in statute or contract or otherwise expressly consented to, and 3) where the Government has cast off the cloak of sovereignty and assumed the status of a private commercial enterprise" Sandia Oil Co. v. Beckton, 889 F.2d 258, 261 (10th Cir. 1989) (citing Library of Congress, 478 U.S. at 317 n.5). The first exception is not relevant to this case. Similarly, the second exception does not apply because it is well settled that interest awards were not specifically provided for when Congress consented to suits against Federal Emergency Management Agency ("FEMA") in 42 U.S.C. § 4072. See Sandia Oil, 889 F.2d at 261 (indicating that waivers of sovereign immunity are strictly construed and "[b]y no stretch of the language in § 4072 can it be construed as expressly consenting to interest awards against FEMA); accord Estate of Lee v. Nat'l Flood Ins. Program, 812 F.2d 253, 256 (5th Cir. 1987) (noting that "although Part B [of § 4072] provides a limited waiver of sovereign immunity . . . it does not provide for awards of prejudgment interest in favor of prevailing plaintiffs").

Thus, Studio Frames' only remaining argument is that interest should be available because the National Flood Insurance Program ("NFIP") has assumed the status of a private commercial enterprise. Although the Fourth Circuit Court of Appeals has not addressed this exception as it relates to NFIP, other circuits have. Those circuits considering the application of the no-interest rule to awards of interest in suits directly against FEMA have found that the no-interest rule provides

3

a bar to such awards. See, e.g., Sandia Oil, 889 F.2d at 258 (holding, on reasoning equally applicable to awards of pre-judgment interest, that post-judgment interest may not be awarded in suits directly against FEMA); Estate of Lee, 812 F.2d at 256 (distinguishing NFIP from a profit-making, private entity against which interest awards may be appropriate because NFIP is a subsidy program); Newton v. Capital Assurance Co., 245 F.3d 1306, 1310 (11th Cir. 2001) (accepting conclusion that interest awards are inappropriate against NFIP).[3] Studio Frames has failed to present evidence distinguishing these cases from the present one.

Currently, FEMA's flood insurance program does not operate as a commercial venture. In Sandia Oil Co., the Tenth Circuit explained that although Congress envisioned the program to become self-sufficient eventually, "[f]rom the existing statutory structure and the available evidence, however, it appears that this goal has not been realized." 889 F.2d at 263. The court noted that Congress instructed FEMA to provide flood policies at rates "which would encourage prospective insureds to purchase flood insurance and which would be consistent with the purposes of the flood insurance program, even if those rates fall below

---

[3] Studio Frames reliance on West v. Harris, 573 F.2d 873 (5th Cir. 1978), is misplaced. West was decided when the relationship between the private insurance companies setting flood insurance and the federal agency running the NFIP was more attenuated under Plan A of § 4072. Under the current plan, Plan B, the money to pay the claims and the standards for adjusting them come directly from the NFIP. See Newton, 245 F.3d at 1306 (clarifying this distinction).

4

actuarial rates." Id. (citing 42 U.S.C. § 4014 (a)(2)).[4] Although the National Flood Insurance Program Actuarial Rate Review establishes that NFIP has increased premiums to amounts greater than those based on historical loss year, it also shows that a certain amount of the premiums, approximately 26%, are still issued at subsidized rates. (Def.'s Mem. in Opp'n, Ex. A. 11). These policyholders are charged premium rates between 35% and 40% of the normal amounts based on "political and statutory considerations that override actuarial consideration." (Def.'s Mem. in Opp'n, Ex. A. 11-12.) Private, commercial enterprises do not take such considerations into account. Because FEMA's flood insurance program more closely resembles a subsidized variety of insurance program than a commercial venture, the no-interest rule applies. See United States v. Worley, 281 U.S. 339, 50 S.Ct. 291 (1930) (holding pre-judgment interest was barred when the federal government subsidizes rather than profits from and government sponsored insurance program); Newton, 245 F.3d at 1310 n.3 (asserting, "[t]he NFIP is a subsidy program," not a "profit-making private entity").

Studio Frames argues, however, that because the NFIP has collected more money in gross premiums than it has paid in losses since 1978, it operates as a commercial enterprise. This argument ignores the way that the NFIP operates. The Ninth Circuit in Flick v. Liberty Mutual Fire Ins. Co., held " [t]he financial

---

[4] Additionally, § 4014 (d), (e), directed FEMA to disregard certain risks to properties in parts of Louisiana, and in areas which have partially completed flood protection systems when calculating premiums.

condition of the NFIP cannot be ascertained simply by subtracting the historical amount of annual losses paid from the historical amount of annual premiums earned." 205 F.3d 386, 395 n.13 (9th Cir. 2000) (rejecting the exact same argument, that NFIP was a commercial venture, in a different context). That court explained, although there was currently a profit showing, "[l]osses from flood claims and expenses inevitably will exceed the funds available in some future years." Id. In the present case, even Studio Frames admits that the two most recent catastrophic losses in 2005, Hurricanes Katrina and Rita, "will likely exhaust the [current] surplus." (Pl.'s Mot. at 5.) Because Studio Frames provides no evidence that the NFIP has changed in such a way that makes them a commercial enterprise, interest on the judgment is barred by the no-interest rule.

III.

Finally, Studio Frames' assertion that even if NFIP is found immune from paying interest, Standard Fire should pay the interest, individually, is unsupported. This argument was addressed and rejected by the Eleventh Circuit in Newton. 245 F.3d at 1309-12 ("We thus conclude that prejudgment interest awards against WYO companies are direct charges on the public treasury forbidden by the no-interest rule and reverse the part of the judgment awarding such interest."). The Newton court explained that although a Write-Your-Own ("WYO") company may write the policy and affix to it its own name, FEMA dictates the terms. Id. Regardless of whether FEMA or a WYO issues a flood insurance policy, United

6

States Treasury Funds are used to pay the insured's claims.  See Gowland v. Aetna, 143 F.3d 951, 955 (5th Cir. 1998).  Thus, "preliminary responsibility is a mirage when the federal government, through FEMA, will always foot the full bill in the end." Newton, 245 F.3d at 1312.  Because it is against the policy of the no-interest rule to require the government, and thus the tax-payers, to pay interest without waiver of sovereign immunity, Studio Frames motion for interest against both the NFIP and Standard Fire is rejected.

IV.

For the reasons set for above, Plaintiff's Motion for Interest on Judgment will be DENIED.

This the day of October 26, 2005

   /s/ N. Carlton Tilley, Jr.
United States District Judge